UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re

CARL D. HURLEY, JR., and
DAWN R. HURLEY,

                    Debtors.
_____

ALL WHEELS FINANCIAL, INC.,

                    Plaintiff,

v.

CARL D. HURLEY, JR., and
DAWN R. HURLEY,

                    Defendants.

Case No. 11-23485

Chapter 7

Adversary No. 12-2205

_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

      This matter came before the Court on the plaintiff All Wheels Financial, Inc.'s motion for summary judgment seeking a nondischargeable judgment against the debtors, Carl and Dawn Hurley. The pro se defendants opposed the motion. The parties filed briefs supporting their respective positions and the Court took the matter under advisement.

      This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

The following facts are undisputed. On or about August 16, 2007, Peterbilt of Winona, Inc., and the Hurleys entered into a Security Agreement/Retail Installment Contract for the purchase of a 2008 Kentucky FVCSC-DDE Trailer. Contemporaneously with the purchase, Peterbilt assigned the contract to All Wheels Financial, Inc. The Hurleys made 27 payments to All Wheels Financial prior to defaulting on their obligation under the contract. The collateral was surrendered and subsequently sold by All Wheels Financial, resulting in a deficiency balance as of January 23, 2012, in the amount of $13,594.25,[1] which had grown to $14,317.35 as of June 11, 2012, plus contractual attorney's fees, costs, and expenses. It appears the debtors received notice of the sale and right to redeem, but there is no documentation submitted showing they received notice of the deficiency.

The Hurleys filed a chapter 7 petition on March 17, 2011. They included on their schedules an unsecured creditor with the name of "All Wheels" at 23 McCleary Court, Unit 25, Concord, ON L4K 3Y9, and that entity received notice of the bankruptcy case, as well as the proof of claim deadline. Unfortunately, the entity disclosed on the debtors' schedules and included on the mailing matrix is not their actual creditor, which is All Wheels Financial, Inc., with business addresses of 10700 Lyndale Avenue South, Bloomington, MN 55420 and 500 Ford Road, St. Louis Park, MN 55426. The debtors had been submitting payments to the latter address.

On April 28, 2011, the chapter 7 trustee filed a Notice of Recovery of Assets and Opportunity

---

[1] The creditor provided written notice of sale to the debtors on February 15, 2010. According to that notice, the debtors were given the option of redeeming the collateral by paying the sum of $58,089.41, plus expenses. The trailer was later sold on April 30, 2010, for $48,000.00 in a private sale.

2

to File Proof of Claim. That notice, which alerted creditors that the deadline by which to file a proof of claim was July 29, 2011, was mailed to all creditors on the mailing matrix. Neither the notice of the bankruptcy case nor the proof of claim deadline notice were sent to the creditor, All Wheels Financial, Inc. However, the plaintiff acknowledges it did receive actual notice of the bankruptcy in October 2011.

After administering the estate, which included the employment of professionals and the sale of real estate, the trustee filed a proposed distribution report on March 30, 2012, providing for an anticipated dividend of 15.1 percent to creditors filing timely general unsecured claims. This adversary proceeding was filed on March 15, 2012.

## ARGUMENTS

All Wheels Financial argues that it did not have notice or actual knowledge of the bankruptcy case until October 2011, well after the deadline to file a proof of claim. Thus, pursuant to 11 U.S.C. § 523(a)(3)(A), the obligation under the contract is not discharged.

The Hurleys argue that prior to and at the time of surrendering the collateral, they had numerous conversations with All Wheels' representatives wherein the creditor was informed of the debtors' intent to file bankruptcy. The debtors claim they were neither notified that the trailer had been sold nor that a deficiency balance was owed, despite the creditor's knowledge of their address. According to the debtors, the failure to properly schedule and notice All Wheels was an honest mistake.

## DISCUSSION

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*

3

*v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Subsection 523(a)(3)(A) of the Bankruptcy Code deals with unscheduled claims other than those specified in section 523(a)(2), (4), or (6). An unscheduled claim is not discharged under subsection (A) if the creditor does not have notice or actual knowledge of the bankruptcy to permit timely filing of a proof of claim. *See* 11 U.S.C. § 523(a)(3)(A). Wrongful acts described in section 523(a)(2), (4), or (6) are not at issue.

Under 11 U.S.C. § 502, a proof of claim may be disallowed if it is not timely filed. The time for filing proofs of claim is set forth in Fed. R. Bankr. P. 3002(b). In chapter 7 cases, however, unlike chapter 11, 12, and 13 cases, some untimely filed proofs of claim are allowed and can receive distributions from the estate. Section 502(b)(9) provides that an untimely claim should be disallowed "except to the extent tardily filed as permitted under subsection (1), (2) or (3) of section 726(a)." In chapter 7 cases, section 726(a)(2)(C) allows payments to unsecured creditors who submit "tardily filed" proofs of claim if the creditor had no notice or actual knowledge of the bankruptcy case to permit a timely filing. The tardy claim must be filed in time to permit payment, i.e., before the distribution of the

4

bankruptcy estate. 11 U.S.C. § 726(a)(2)(C)(ii). These claims are allowed the same priority as timely filed claims.

On its face, section 523(a)(3)(A) addresses the right of a creditor to file a timely proof of claim but does not address tardily filed claims that share equally in the distribution of the chapter 7 estate under section 726(a)(2)(C). Courts have interpreted the interplay between the two statutes differently. Some bankruptcy courts have held that a debt must be excepted from discharge under section 523(a)(3)(A) even if the creditor had knowledge in time to file a tardy proof of claim and fully participate in the distribution under section 726(a)(2)(C). *See In re Schlueter*, 391 B.R. 112 (B.A.P. 10th Cir. 2008); *In re Mai Yer Moua*, 457 B.R. 755 (Bankr. D. Minn. 2011); *In re Bosse*, 122 B.R. 410 (Bankr. C.D. Cal. 1990). On the other hand, some courts have held that in chapter 7 cases, section 523(a)(3)(A) must be read in conjunction with section 726(a)(2)(C), in essence holding that this special category of tardily filed claims is the functional equivalent of a timely filed claim for the purpose of section 523(a)(3)(A). *See In re Romano*, 59 Fed. Appx. 709 (6th Cir. 2003); *In re Reed*, 08-20229, 2009 WL 1231761 (Bankr. N.D. Tex. 2009); *In re Ricks*, 253 B.R. 734 (Bankr. M.D. La. 2000); *In re Kuhr*, 132 B.R. 421, 424 (Bankr. E.D. Cal. 1991). This latter group has been categorized as applying the "distribution approach."

Under the "distribution approach," unless the debtor has intentionally failed to provide appropriate notice to a creditor in time for such creditor to file a proof of claim by the proof of claim deadline date, such claim will still be discharged, provided the creditor received notice or actual knowledge of the bankruptcy in sufficient time to allow the creditor to file a claim and to receive a pro rata distribution of the dividend made to other creditors of the same priority. This means that in this

5

case, if All Wheels Financial had knowledge of the bankruptcy and could have tardily filed a proof of claim and fully participated as an unsecured creditor in the distribution, its debt would not be excepted from discharge under section 523(a)(3)(A). *See In re Romano*, 59 Fed. Appx. at 714.

According to All Wheels Financial, it found out about the bankruptcy case in October 2011. Therefore, by its own admission, it could have filed a tardy proof of claim and been treated like every other unsecured creditor who received proper notice and filed proof of claims. However, instead of filing a late proof of claim at that time (six months prior to the trustee's final report) and participating in the 15 percent distribution to unsecured creditors, it waited until March 2012 before asserting its right to a 100 percent nondischargeable obligation. Therefore, at the very least, it failed to mitigate its damages by collecting a portion of the claim from the bankruptcy estate.

Admittedly, the debtors provided an erroneous address for the creditor on their bankruptcy schedules, and the documents submitted include a copy of a Canadian entity with a similar name that advertises on the internet and has the same address as is on the debtors' schedules. Since they had been sending payments to Minnesota and communicating with the creditor, they should have noticed the error. When their case became an asset case, they failed to amend their schedules with a correct address. They claim the creditor should have known about the bankruptcy because they advised the creditor of their intent to file. This is insufficient, of course, because a statement of intent, however vehement, does not constitute notice of filing. *See In re Johnson*, 501 F.3d 1163, 1178 (10th Cir. 2007) (holding inquiry notice must at least contain enough information to permit creditor to verify that petition has been filed); *but see Rowe v. Steinberg*, 253 B.R. 524, 528-29 (E.D. Mich. 2000) (holding telephone call to creditor informing of pending bankruptcy may constitute actual notice).

6

Nevertheless, there is no allegation that the mistake was anything but an honest one, and I cannot imagine any motivation for intentionally using a wrong address. *Cf. Schlueter*, 391 B.R. at 116-17 (finding issue of material fact as to whether debtor had knowledge of omitted creditor's claim, precluding summary judgment).

Courts holding a debt excepted from discharge when the creditor cannot file a "timely" claim are interpreting the word as it is used in Fed. R. Bankr. P. 3002 ("a claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors. . ."). But "timely" is not a word of art, and courts applying the "distribution approach" are more persuasive. Webster's merely says that timely means "in time." Merriam-Webster Dictionary (11th ed. 2008). In time for what? To collect from the estate. Certainly it was not meant to set a trap for debtors who do list and schedule a creditor but do not get an address right; the word must be applied to protect certain rights for the creditor, i.e., to collect from the estate. The plaintiff in this case received notice or actual knowledge of the bankruptcy *in time* to file a proof of claim and to collect from the estate, but it chose not to do so. Applying the normal meaning of the word, the creditor did have notice or knowledge in time for *timely* filing a proof of claim. The creditor also had to meet the requirements of section 726(a)(2)(C)(i) and (ii), which it did here, in order to be in the same priority as other creditors who received notice and met the bar date[2], but it still could have filed a timely proof of claim, as that term is used in section 523(a)(3). Section 726(c)(2) may use different words to denote the special qualification for claims filed

---

[2]The court in *Moua*, 457 B.R. at 761-62, correctly points out that this may cause administrative problems for a trustee if, for example, the tardy claim comes in after the checks are cut but not mailed. Perhaps a court might then interpret the proof of claim as not making the deadline for distribution. However, in this case the creditor had a six-month lead time.

7

after the Rule 3002 bar date but before distribution, but this is a distinction without a difference. Both are in the same priority, timely and in time.

The plaintiff's motion for summary judgment is denied, and the complaint is dismissed. The debt is discharged. A separate order will be entered accordingly.

August 20, 2012

                                                    Margaret Dee McGarity
                                                    United States Bankruptcy Judge